# IN THE COURT OF APPEALS OF IOWA

No. 22-0733
Filed August 9, 2023

**JERRID MICHAEL WINFREY,**
Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.

An applicant appeals the denial of his postconviction-relief application. **AFFIRMED.**

Karmen R. Anderson, Des Moines, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee State.

Considered by Schumacher, P.J., and Chicchelly and Buller, JJ.

**SCHUMACHER, Presiding Judge.**

Jerrid Winfrey appeals the denial of his postconviction-relief (PCR) application. He raises twelve claims on appeal, alleging ineffective assistance of counsel, prosecutorial misconduct, and an illegal sentence. We affirm the denial of Winfey's PCR application.

## I.   Background Facts & Proceedings

Winfrey was tried and convicted of first-degree murder, attempted murder, and willful injury causing serious injury in connection to a shooting that occurred in 2008. The shooting killed Richard Lewis and injured Damont Jackson. Winfrey's convictions were upheld on direct appeal. *See State v. Winfrey*, No. 10-0304, 2011 WL 5387263, at *5 (Iowa Ct. App. Nov. 9, 2011).

Attorneys Matt Sheeley and Rachel Seymour initially represented Winfrey. Their involvement, as relevant in this appeal, consisted of obtaining a competency evaluation for Winfrey. A conflict subsequently arose and Sheeley and Seymour were permitted to withdraw. Jesse Macro and Chris Kragnes then represented Winfrey, including at trial. Macro also served as Winfrey's appellate counsel.

Winfrey filed this PCR application, his first, in 2012. He raised a dozen claims relating to various alleged errors by trial counsel and appellate counsel. Following hearing on the application held in late 2021, the PCR court denied Winfrey's application. Winfrey now appeals.

## II.   Standard of Review

"We typically review [PCR] proceedings on error. However, when the applicant asserts claims of a constitutional nature, our review is de novo. Thus,

we review claims of ineffective assistance of counsel de novo." *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001) (citations omitted).

## III. Ineffective Assistance of Counsel

Winfrey predominately alleges his trial counsel and appellate counsel were ineffective. Before turning to the specific claims, we summarize the law surrounding claims of ineffective assistance of counsel.

"[A]ll [PCR] applicants who seek relief as a consequence of ineffective assistance of counsel must establish counsel breached a duty and prejudice resulted." *Lamasters v. State*, 821 N.W.2d 856, 866 (Iowa 2012) (quoting *Castro v. State*, 795 N.W.2d 789, 794 (Iowa 2011)). "Failure to demonstrate either element is fatal to a claim of ineffective assistance." *State v. Polly*, 657 N.W.2d 462, 466 (Iowa 2003).

For the breach-of-duty prong, an applicant must demonstrate that their counsel's conduct, when measured against "prevailing professional norms," fell "below the standard demanded of a reasonably competent attorney." *Lamasters*, 821 N.W.2d at 866. "We start with the presumption that the attorney performed competently and proceed to an individualized fact-based analysis." *Id.* (citation omitted).

> "[I]neffective assistance is more likely to be established when the alleged actions or inactions of counsel are attributed to a lack of diligence as opposed to the exercise of judgment." [*Ledezma*, 626 N.W.2d at 142.] "Improvident trial strategy, miscalculated tactics or mistakes in judgment do not necessarily amount to ineffective counsel." *Hinkle v. State,* 290 N.W.2d 28, 34 (Iowa 1980). "When counsel makes a reasonable tactical decision, this court will not engage in second-guessing." *Fryer v. State,* 325 N.W.2d 400, 413 (Iowa 1982).

*Id.*

To establish prejudice, Winfrey must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citation omitted). "[R]easonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (citation omitted).

### A.    Testimony of Shane Clements

Winfrey raises several claims related to his alibi witness, Shane Clements. He alleges counsel was ineffective by asking questions related to Clements's criminal history and the nature of his relationship with Winfrey—that Clements was with Winfrey at the time of the shooting to buy marijuana. He also faults counsel for not objecting to testimony of two witnesses the State presented to impeach Clements's testimony.

We determine that counsel was not ineffective in addressing Clements's criminal history and connection to Winfrey. Trial counsel explained the decision to proactively address each issue. First, testimony related to Winfrey selling drugs to Clements was necessary to explain Clements's presence in the area and was not overly prejudicial. Many witnesses in the case had credibility issues, and counsel reasonably believed that Clements would not be overly prejudiced by the jury's knowledge of the sale of marijuana. Moreover, testimony about Winfrey's drug dealing was already in the case—it served as the State's theory of motive and was already discussed by other witnesses. Second, both topics were highly likely to be addressed by the State on cross-examination. As a result, the decision to question Clements on his criminal record and connection with Winfrey was a

reasonable strategic decision. Finally, Winfrey was adamant that his counsel utilize Clements as a witness, despite Macro's misgivings on his utility to the case.

Winfrey also alleges counsel was ineffective in failing to object to two witnesses the State called to impeach Clements. One testified that Clements was not a member of the YMCA the year he testified to being a member, while the other testified that Clements was not a student at a local community college the year he claimed to be enrolled. Winfrey contends such testimony was improper because it was extrinsic evidence of a prior inconsistent statement. *See* Iowa R. Evid. 5.613(b). But Winfrey's reliance on this rule is misplaced. The rule, by its terms, relates only to a "prior inconsistent statement." The State's witnesses were not relating prior statements by Clements that were inconsistent with his testimony. Instead, the statements were used to impeach Clements by contradicting his testimony on the timing of his involvement in two organizations—he said he was involved with the YMCA and a community college when he was not. Thus, counsel had no basis to object to the testimony, and we determine no breach of duty occurred.

### B. Testimony of Nicole Sanders & the Confrontation Clause

Winfrey contends his trial and appellate counsel were ineffective for failing to object to the testimony of Nicole Sanders because it violated his Confrontation Clause rights.[1] Sanders was the mother of Lewis. She testified to an argument that occurred months before the shooting between Winfrey's uncle and Lewis, in

---

[1] In his appellate brief, Winfrey also contends counsel was ineffective in failing to object to the testimony as hearsay. But counsel did object to the testimony on hearsay grounds, which preserved the issue for appellate review. *See Winfrey*, 2011 WL 5387263, at *1-2.

which Winfrey's uncle accused Lewis of stealing marijuana. Sanders testified that Winfrey spoke to Lewis and stated, "You are not going to be disrespecting my uncle." The State believed Winfrey shot Lewis over a dispute with Winfrey's uncle. Trial counsel objected to Sanders's testimony on hearsay grounds but was overruled. On appeal, this court found Sanders's testimony was hearsay but that the erroneous admission of the testimony was harmless. *See Winfrey*, 2011 WL 5387263, at *2.

We conclude counsel was not ineffective for several reasons. First, the Confrontation Clause is only implicated by testimonial hearsay. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004).[2] While in error, the district court overruled Winfrey's hearsay objection. *See Winfrey*, 2011 WL 5387263, at *2 (finding the statements were hearsay). At that point, there was no legal basis to object on Confrontation Clause grounds.

Second, the statements were not testimonial. While the court in *Crawford* did not give a precise definition of "testimonial," it did provide several examples:

> The first formulation involved *ex parte* in-court testimony or its functional equivalent where the declarant would reasonably expect the statements to be used at trial and where the defendant was unable to cross-examine the declarant. The second formulation involved formalized testimonial materials such as confessions and depositions. The third and most open-ended formulation included statements made under circumstances that would lead witnesses to objectively believe the statements might be used at trial.

*State v. Shipley*, 757 N.W.2d 228, 235 (Iowa 2008) (citing *Crawford*, 541 U.S. at 51-52). A single remark made in a dispute between acquittances is not the type

---

[2] Winfrey's appellate brief relies on *Ohio v. Roberts*, 448 U.S. 56 (1980). But that case was abrogated by *Crawford*, 541 U.S. at 60.

of statement generally made in lieu of formal testimony. *See Crawford*, 541 U.S. at 51 ("An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted.").

Finally, any error was harmless and would not have warranted relief even if the Confrontation-Clause objection was preserved and raised on direct appeal. *See State v. Kennedy*, 846 N.W.2d 517, 528 (Iowa 2014) (noting evidence admitted in violation of the Confrontation Clause is subject to harmless-error analysis). As this court noted on Winfrey's direct appeal, the evidence against Winfrey was overwhelming and Sanders's testimony was duplicative of other evidence on the apparent dispute between Lewis and Winfrey's uncle. *Winfrey*, 2011 WL 5387263, at *2. As a result, Winfrey fails to fails to prove the reasonable probability of a different outcome.

### C.    Toxicology Expert

Winfrey claims trial counsel was ineffective by failing to obtain an expert witness on the effects of marijuana on a witness's perception to challenge Jackson's identification of Winfrey.[3] A toxicology report showed the presence of marijuana in Jackson at the time of the shooting. The trial court ruled that Winfrey could only discuss the matter through the testimony of an expert witness, as the effects of marijuana on a person's perception were outside the realm of layperson knowledge. Winfrey did not present an expert witness at trial.

---

[3] To the extent that Winfrey makes the same claim related to opiates, that matter is not preserved for our review because the district court never ruled on it. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

We determine that counsel was not ineffective by failing to present an expert on this issue. Macro testified at the PCR hearing that he and co-counsel sought an expert on the issue but were unsuccessful in finding one. He added that there were no studies on the issue due, in part, to marijuana's status as an illegal narcotic, which hampered the ability to conduct studies. Trial counsel cannot be faulted for failing to present evidence that did not exist. Trial counsel also attempted to address the issue in other ways—appealing to the jury's common sense and attempting to examine Dr. Farber on the subject. And trial counsel cross-examined Jackson at length on his identification. Counsel was not ineffective.[4]

### D. Kelechi

Winfrey alleges his trial counsel was ineffective in failing to utilize a witness, Ejimofer Kelechi, to impeach Nicholas Deering. Deering, who was facing federal charges at the time of his testimony, described incriminating statements Winfrey made to him while Winfrey awaited trial in jail. In an undated affidavit submitted at the PCR hearing, Kelechi alleged that Deering made statements suggesting he would provide false testimony to reduce his sentence.

We determine trial counsel was not ineffective in failing to utilize Kelechi. Neither Macro nor Kragnes recalled Kelechi as a potential witness. The affidavit is undated, so it is unclear if it was even possible for counsel to discover him as a

---

[4] Winfrey further contends the PCR court erred in relying on the lack of an expert witness at the PCR trial to reject his claim despite the fact that the very same court denied his application for an expert at state expense. But Winfrey only presents that issue as a free-standing claim in his reply brief. "Parties cannot assert an issue for the first time in a reply brief." *Sun Valley Iowa Lake Ass'n v. Anderson*, 551 N.W.2d 621, 642 (Iowa 1996). The matter is therefore waived.

potential witness. Winfrey bears the burden of establishing that counsel's conduct fell below the standard of reasonably competent attorneys, which he has failed to do on this claim.

And Winfrey was not prejudiced. Trial counsel spent a significant amount of time cross-examining Deering on the benefits he would obtain under the federal sentencing guidelines in return for his testimony. As a result, the jury was already aware of the incentives Deering had to testify, and it could draw its own conclusion on his credibility in light of that information.

### E.    Mosley's Map

Winfrey contends trial counsel was ineffective in failing to adequately utilize a map drawn by Dorian Mosley, a witness to the shooting, to impeach his statements at trial. During the investigation, Detective First name? O'Donnell had Mosley draw a map placing Winfrey around the scene of the shooting. The map depicted Winfrey near, but not at, the car where Lewis and Jackson were shot. That said, the map only related where Mosley saw Winfrey about ten minutes before the shooting. At trial, Mosley testified that he did not know where Winfrey was at the time of the shooting. When defense counsel asked O'Donnell if he remembered Mosley's map, the State asked for a sidebar. Defense counsel subsequently dropped the issue.

Counsel was not ineffective in their use of Mosley's map. Macro testified to several reasons why they did not make further use of the map. Macro believed Mosely's testimony was already strong and did not need to be bolstered by the map. In any event, the map was not that probative—it was not to scale, and it depicted where Mosely saw Winfrey about ten minutes before the shooting. The

distance between where Winfrey was at that time and the shooting ten minutes later could easily have been covered by Winfrey. And Mosely already testified to where he last saw Winfrey. He was clear in his testimony that he never saw Winfrey near the car where the shooting occurred. There was little to impeach—it would not aid Winfrey to highlight Mosely's inconsistent statements when Mosley had consistently declined to place Winfrey near the shooting.

### F.     Eye-Witness Jury Instruction

Winfrey claims trial counsel was ineffective in failing to request a specific jury instruction on eye-witness identifications—Iowa Uniform Jury Instruction 200.45. Winfrey believes that if that instruction had been given, the jury would not have credited Jackson's identification of Winfrey. But Kragnes and Macro testified that after considering the instruction, they decided not to pursue it further. They made that decision because they believed the instruction could suggest Jackson's identification was particularly credible while undermining the testimony of witnesses that were more helpful to Winfrey. Counsels' decision not to utilize the instruction was therefor made after consideration of its potential benefits and weaknesses. We decline to second-guess counsels' reasonable strategic decisions.

### G.     O'Donnell Testimony

Winfrey contends trial counsel was ineffective in failing to object to testimony of Detective O'Donnell relating to the jury that Jackson identified Winfrey

as the perpetrator of the crime.[5]  Winfrey claims O'Donnell's statements amounted to backdoor hearsay.  *See, e.g.*, *State v. Tompkins*, 859 N.W.2d 631, 643 (Iowa 2015).

Counsel was not ineffective because their decision not to object was based on reasonable strategic decision-making.  Kragnes testified that he did not object because Jackson already testified and identified Winfrey as the shooter.  Kragnes was also worried that objecting to the testimony would give it undue weight with the jury.  He explained:

> The biggest reason [he did not object] is after Mr. Jackson already testified to [his identification of Winfrey], I'm not going to continue to object in front of the jury and give them the impression that I'm still worried about it.
> They've already heard from [Jackson] that this is the guy that shot him and it's not going to come as a surprise to them that he told the detective this.

Counsel's thought process was rational and the decision was the product of reasonable strategic thinking.

### H.    Mistrial

Winfrey alleges trial counsel was ineffective by failing to move for a mistrial following a few instances of inappropriate behavior by Jackson and members of the public.  In particular, he points to grunting noises Jackson made to Winfrey during his testimony, as well as an incident where members of the public were blowing kisses at Jackson.

---

[5] Winfrey does not identify with citations to the record which statements he believes counsel should have objected to.  Accordingly, we could consider the issue waived. *See* Iowa R. App. P. 6.903(2)(g)(3).

Counsel was not ineffective. First, counsel testified at the PCR trial that rather than move for a mistrial, he sought and obtained a jury instruction on only considering record evidence when rendering a verdict. Counsel reasonably believed the instruction was sufficient to address the issue. *See State v. Christensen*, 929 N.W.2d 646, 660 (Iowa 2019) ("[W]e have stated curative instructions are generally sufficient to cure most trial errors."). Second, Winfrey failed to establish he was prejudiced. After both instances of alleged misconduct, the trial judge noted that the jury was unlikely to have seen the misbehavior. Winfrey merely alleges the conduct was so prejudicial that a curative instruction was insufficient, but he does not affirmatively demonstrate what, if any, prejudice resulted.

## I.    Prosecutorial Misconduct

Winfrey claims the State knowingly obtained false testimony from Deering, which amounted to prosecutorial misconduct. Deering testified to incriminating admissions Winfrey made to him while in jail awaiting trial, including the type of weapon Winfrey used in the shooting. Winfrey failed to raise this claim on direct appeal. So to the extent that Winfrey raises the issue as a free-standing claim of prosecutorial misconduct, the matter is waived. *See* Iowa Code § 822.8 (2012) ("Any ground finally adjudicated or not raised, or knowingly, voluntarily, and intelligently waived in the proceeding that resulted in the conviction or sentence, or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application.").

To the extent that Winfrey alleges appellate counsel was ineffective in pursuing the claim, that contention lacks merit. Winfrey alleges the State

intentionally elicited false testimony from Deering involving his belief Winfrey used a nine-millimeter handgun. When Deering was interviewed by police, he slightly equivocated on this issue, stating, "I think it was a nine [millimeter]." Similarly, at trial, Deering stated, "[I] believe he said it was a nine-millimeter."

> To prove her claim of prosecutorial misconduct based on alleged perjured testimony, [the defendant] was required to prove that (1) the prosecution either introduced or failed to correct false testimony, (2) the false or perjured testimony was given at trial, (3) the prosecution knew the perjured testimony was given at trial, (4) the testimony was "material," and (5) the defendant has not waived the claim by failing to raise it at trial if she had reason to know of the falsity of the subject testimony.

*DeVoss v. State*, 648 N.W.2d 56, 63-64 (Iowa 2002).

Winfrey's allegation of prosecutorial misconduct fails several prongs. Deering's statements to police were consistent with what he testified to at trial—his belief that Winfrey used a nine-millimeter handgun. That Deering slightly equivocates—stating that it was his belief—does not amount to false testimony. Rather, inconsistencies and equivocations in a witness's testimony can be addressed on cross-examination, which is exactly what happened here—Kragnes challenged Deering on whether he was sure he told police Winfrey used a handgun. Second, there is nothing to suggest the State knew Deering was providing false testimony. And appellate counsel could not have raised the issue on direct appeal because trial counsel never objected to the statements—error was not preserved. Thus, appellate counsel was not ineffective in failing to bring a meritless claim.

**J.    Speedy Trial**

Winfrey claims his first set of trial counsel, Sheeley and Seymour, were ineffective by forcing him to obtain a competency evaluation in order to obtain more time to prepare for trial after he refused to waive his right to a speedy trial. Further, the delay caused by the evaluation violated his right to a speedy trial. He also claims Macro and Kragnes were ineffective in pursuing the issue.

First, Sheeley and Seymour were not ineffective by seeking a competency evaluation although it delayed trial beyond the time frame guaranteed by Winfrey's speedy trial rights. Both Sheeley and Seymour expressed concerns over Winfrey's competency based on his unwillingness to engage in his own defense. In particular, Seymour highlighted worries over Winfrey's age and "his inability or unwillingness to articulate any particular reason that he would not consider waiving his speedy trial." At the hearing on the motion for a competency hearing, Winfrey gave little rationale for refusing to waive his speedy trial despite simultaneously wanting counsel to depose thirty-three witnesses. His reason—"I don't want to"—completely ignored the amount of time necessary to effectuate an adequate defense. And the district court found probable cause for a competency hearing, indicating the court found trial counsels' concerns credible. As a result, counsel was not ineffective in pursuing the competency hearing.

Second, Macro and Kragnes were not ineffective in failing to pursue their concerns over Sheeley and Seymour's conduct. Both Macro and Kragnes indicated at the PCR trial that they were troubled by prior counsels' decision to seek a competency hearing. But, upon investigation, they could find no remedy

for defense counsels' delay of trial. Counsels' investigation met the standards demanded of reasonably competent counsel.

## IV. Merger

Winfrey contends the trial court erred by failing to merge his convictions for willful injury and attempted murder, which violated his rights under the Double Jeopardy Clause. But our case law is clear that convictions of willful injury and attempted murder do not merge. *See Krogmann v. State*, 914 N.W.2d 293, 325 (Iowa 2018); *see also State v. Clarke*, 475 N.W.2d 193, 194-95 (Iowa 1991) (noting the elements of the offenses differ because willful injury requires proof of serious injury, while attempted murder does not). The court did not err in failing to merge the offenses.

**AFFIRMED.**